PAVY, Judge.
Plaintiffs sued the Evangeline Parish Police Jury for damages resulting from its failure to perform an obligation contained in a right-of-way grant from plaintiffs to defendant. The trial judge awarded $1,500 and assessed the costs against said public body. Plaintiffs have appealed to have the award increased. Defendant has answered the appeal to reverse the award and to be declared exempt from payment of costs.
In 1970, the said Police Jury and the State Department of Public Works engaged in a joint effort to dredge and clean the channel of Bayou Des Cannes, an important drainage stream in Evangeline Parish. Although the exact arrangement is not clear, it appears that the Police Jury was to acquire the requisite rights of way for the dredging and the Department of Public Works would supervise the project and provide the cost.
When plaintiffs were approached to sign the right of way, V. A. Duplechain, the plaintiff who handled the family affairs for the Duplechains, requested that the Police Jury agree to close or fill gaps where Horseshoe Bayou emptied into or out of Bayou Des Cannes so as to dam off Horseshoe Bayou and thus form a lake on plaintiffs’ property. To meet this request, there was inserted into the right-of-way deed two paragraphs, the exact wording of which was mostly the choice of an employee of the Soil Conservation Service which was assisting the Police Jury in preparing the rights of way. These paragraphs read as follows:
“1. That the ends of the old horseshoe bayou be filled in for the purpose of making a small lake. Location as shown on sketch map attached and made a part of this easement document.
2. That the filling in of the old horseshoe bayou will not intercept and block drainage from adjourning land owners or cause any damage to any other farms.”
Plaintiffs signed the right-of-way deed in favor of the Police Jury. The Department of Public Works let the contract for dredging and when the contractor reached plaintiffs’ property, he refused to fill the gaps. This was in accordance with a specification in the dredging contract that no lateral or subsidiary drains in and out of Bayou Des Cannes would be dammed unless written releases were first obtained from landowners which might be affected by the damming.
*360 There was some evidence to the effect that some of the adjoining landowners had granted verbal releases and that one had granted a written release but that document was not in evidence and the testimony is that it was not applicable to damming the gaps in Horseshoe Bayou at the point in question. In any event, we conclude that written releases sufficient to meet the requirements of the Department of Public Works were not furnished.
After the dredging was completed, plaintiffs had the gaps at the end of Horseshoe Bayou dammed off and instituted suit for the sum of $7,500, claiming that this was the cost to them for the damming or filling in of the gaps and that the Police Jury is liable in that amount.
We think the trial judge properly concluded that the requirement for obtaining releases was foreign to the relationship between plaintiffs and defendant. The provision in the right-of-way deed does not condition the Police Jury’s obligation on obtaining the releases. Whatever may have been the arrangement between the Department of Public Works, its contractor and the Police Jury, that would only affect the rights and obligations between those parties and could not change or decrease plaintiffs’ rights or defendant’s obligation. That obligation was conditioned only by the interception or blockage of drainage or damage to farms.
Defendant argues that because the provision relating to interception etc. was at plaintiffs’ request, it must be strictly ■construed against them to such an extent that the evidence discloses such interception or blockage that the obligation to fill the gaps never came into existence at all. We cannot agree. The two added provisions were put in because of plaintiffs’ request but the interception provision was mostly to protect the Police Jury. It must be construed in the light of its purpose and that was to prevent exposure of the Police Jury to liability or criticism for interfering with drainage as it had existed. The evidence does not show that the damming resulted in anything more than a minimum or insignificant amount of disturbance to the drainage in the area and, certainly, none that would create a cause of action for damages. We note particularly the trial judge’s observation that the trial was held two years after the damming and no showing was made of consequential flooding of adjoining lands. Much of defendant’s evidence regarding the interception and blockage consisted of opinions and speculations from a theoretical viewpoint and based on the experts’ knowledge gained solely from a topographical map. The two-year experience is contrary to those opinions. Further, we cannot help but realize that whatever flooding may result from the damming, the Police Jury cannot be held liable for it because it was plaintiffs who effected the damming. To give the stipulations the effect sought by defendant would necessitate a strained construction of the words therein resulting in an unrealistic and inequitable result. Therefore, we agree with the trial judge that plaintiffs are entitled to an award.
Plaintiffs strenuously argue that the $1,500 award is contrary to the evidence and should be increased to $7,500. They offered the testimony of Mr. Manson Vincent, a dirt contractor from Lake Charles, who testified that he did the work of filling in the gaps for plaintiff on an equipment rental and cost basis and that it came to $7,600. Vincent’s work apparently consisted of more than mere filling in of the gaps. This was borne out by plaintiffs’ other quantum witness. (Roger Lee La-fleur) whose estimate for the work done as observed by him after completion was $7,500 and which he described as the building of a levee all along the bayou at the point of the gaps and between the gaps, the dressing of the levee slope and the making of a roadbed on its top. For the convenience of V. A. Duplechain, a resident of Texas, who wished to be at the site during work, Vincent did the job on six *361 teen weekends. This necessitated hauling the equipment from Lake Charles to the job site with an additional cost of $1,500. Further unnecessary expense was incurred in this job because it was done from January to April, a substantial portion of which time dirt work was extremely difficult if not impossible. Vincent’s invoices for the work showed sixteen weekends’ work each of which included two 12-hour days. We compute this to be nine ordinary (five days of 8 hours each) weeks to complete the job that he did.
Plaintiffs’ other expert, Lafleur, gave a flat price of $7,500 for the work and could not break it down or otherwise explain his computation. Also, his work would have covered considerably more than the Police Jury was obligated to do under the terms of the added provision in the right-of-way grant.
The trial court relied on an estimate of cost to fill the gap given by Mr. George Johns, the district engineer for the Department of Public Works, with 21 years’ experience. He had not visited the site but had a detailed topographic map of the area. He allowed one day for assembling equipment at the job site, one day for returning it after completion and two days of work, all at $400 per day and added $300 for good measure. He estimated it would take from four to five hours to fill each of the gaps at the end of Horseshoe Bayou. One end had a gap 30-35 feet wide. The other had a gap (actually two gaps with high ground in between) 75 to 90 feet wide. The levee actually built was 20 to 30 feet high and had a base of approximately 100 feet wide and a top about 40 feet wide. The spoil for filling the gaps was right at or near the gaps themselves. It is also shown that the contractor, in dredging, traversed the whole of the Duplechain property in two weeks and about half of those days were poor working days. We cannot conclude that the lower court award of $1,500 constituted manifest error and will affirm it.
The decree of the lower court casting the Police Jury for costs is erroneous and must be corrected. R.S. 13:4521 clearly provides that no public body shall be required to pay costs in any judicial proceeding except stenographer’s cost for taking testimony. The jurisprudence has been constant that said statute applies generally except as to the noted exception regarding stenographer’s cost. Counsel for plaintiff has pointed out no authority in support of assessing the Police Jury with cost and we are unable to find any reason justifying it.
Accordingly, the judgment of the district court is hereby amended so as to relieve the defendant, Evangeline Parish Police Jury, from all court costs except the stenographer’s cost for taking testimony and as amended it is affirmed. Appellant is to bear all costs of this appeal.
AFFIRMED, AS AMENDED.